UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANITA MOSTILLER,

                Plaintiff,

                                         **DECISION AND ORDER**
                                                  09-CV-218A

       v.

CHASE ASSET RECOVERY CORP.,

                Defendant.

## INTRODUCTION

Plaintiff Anita Mostiller filed a complaint in this case on March 12, 2009, accusing defendant Chase Asset Recovery Corp. of violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p. Plaintiff served defendant with the summons and complaint, but defendant failed to answer or appear. On November 13, 2009, this Court granted plaintiff's motion for default judgment and ordered an evidentiary hearing as to damages. The hearing occurred on December 18, 2009, at which plaintiff testified and submitted an exhibit pertaining to defendant's conduct. Given the allegations that defendant is deemed to have admitted by default, and given the evidence that plaintiff submitted at the evidentiary hearing, the Court awards damages along with costs and fees as described below.

**BACKGROUND**

This case concerns defendant's conduct in attempting to collect on a loan used for a motorcycle purchase. The following facts come from the allegations in the complaint, which the Court will construe as true since defendant is in default, and from the testimony taken at the evidentiary hearing.

A few years ago, plaintiff co-signed a loan issued by HSBC Bank to allow her now-ex-boyfriend, Raphael Moscoso, to purchase a motorcycle. Sometime thereafter, both signatories to the loan agreement defaulted. HSBC Bank eventually repossessed the motorcycle and employed defendant to collect on the loan.

On or about December 2, 2008, defendant called plaintiff's home telephone number and left a message identifying itself as "Chase Asset Recovery." As indicated by the audio recording played and submitted at the hearing as *Exhibit A*, defendant left the following message:

> This is for Anita. Um, my name is Frank with Chase Asset Recovery. Give me a call back as soon as possible, 716-818-8749, uh, the account for the motorcycle will be turned over to the county Monday, the eighth of December [2008] because Raphael cannot be located so we're gonna need to take action against you. So, I can't get you on the phone, so I'll try out your house when you call back, 716-818-8749, thank you.

Defendant left this message even though HSBC Bank had not decided to sue plaintiff, and even though defendant lacked either intent or authorization to sue plaintiff on its own. Based on the above message, plaintiff believed that

2

defendant intended to commence a lawsuit against her. Additionally, plaintiff's fiancee Alex Hernandez overheard defendant's message. Plaintiff's fiancee was not aware of the debt in question prior to overhearing defendant's message.

On March 12, 2009, plaintiff filed the complaint in this case. The complaint contained a single claim that defendant committed multiple violations of the FDCPA. Specifically, plaintiff alleged the following:

> Defendant violated 15 U.S.C. § 1692b(2) and 15 U.S.C. § 1692c(b) by disclosing the subject debt to Alex Hernandez.
>
> Defendant violated 15 U.S.C. § 1692d and 15 U.S.C. § 1692d(2) by using language the natural consequence of which is to abuse the hearer when stating Defendant would send the account over to the county and take action against her if they did not hear from Plaintiff.
>
> Defendant violated 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692e(5) and 15 U.S.C. § 1692e(10) by using false and misleading representations when stating Defendant would send the account over to the county and take action against Defendant if they did not hear from Plaintiff.

(Dkt. No. 1 ¶ 20.)

According to the docket, plaintiff served defendant on April 6, 2009. Defendant never answered the complaint or otherwise appeared. Accordingly, plaintiff requested an entry of default on August 10, 2009. The Clerk of the Court filed an entry of default on August 11, 2009. On September 16, 2009, plaintiff filed a motion for default judgment as to liability and for a hearing as to damages. In the papers in support of the motion for default judgment, counsel for plaintiff set forth that "Defendant['s] in-house counsel, Frank Corsi, has been apprised of

3

these proceedings and was provided an extra copy of the summons and complaint on August 14, 2009, but has chosen not to appear or otherwise defend this action. This office has not heard from Defendant or their counsel." (Dkt. No. 7-2 at 1.) The Court held oral argument on the motion for default judgment on November 13, 2009. The Court granted the motion orally and set a date for a hearing.

On December 18, 2009, the Court held the evidentiary hearing. Plaintiff, who is 46 years old, testified at the hearing. In addition to testifying to the background narrative that the Court summarized above, plaintiff recounted that her fiancee became upset upon overhearing the message that defendant left. Plaintiff concluded with testimony to support the claim in her complaint that "as a result of the Defendant's FDCPA violations as alleged herein, [she] became nervous, upset, anxious and suffered from emotional distress." (Dkt. No. 1 ¶ 21.)

On January 4, 2010, counsel for plaintiff submitted affirmations in support of plaintiff's request for an award of costs and attorney fees.

## DISCUSSION

### *Liability*

"Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation. And it tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram*

*Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (citation omitted).  Because defendant never answered or otherwise challenged the complaint, all allegations in the complaint are now deemed admitted.  Nonetheless, "[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citations omitted).  Accordingly, the Court will assess each of plaintiff's award requests in light of the admissions that defendant is deemed to have made.

### *Statutory Damages*

Section 1692k(a)(2)(A) of the FDCPA provides for statutory damages of up to $1,000 per plaintiff.  *See also Savino v. Computer Credit, Inc.*, 164 F.3d 81, 86 (2d Cir. 1998) ("All that is required for an award of statutory damages is proof that the statute was violated, although a court must then exercise its discretion to determine how much to award, up to the $1,000.00 ceiling.") (citations omitted).  Plaintiff seeks the maximum amount of statutory damages in this case given the unfounded and unauthorized threat of litigation that defendant made.  "In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors . . . the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  15 U.S.C. § 1692k(b)(1).  Here, the Court can understand why plaintiff would have

5

felt upset about the telephone message that defendant left.  Nonetheless, the complaint does not allege repeated telephone calls or repeated threats of litigation.  The FDCPA violations now deemed admitted relate to an isolated incident that occurred on or about December 2, 2008.  Under these circumstances, while the Court believes that an award of statutory damages is appropriate, the maximum amount permitted under the FDCPA is not necessary.  The Court thus will award plaintiff statutory damages in the amount of $150 pursuant to 15 U.S.C. § 1692k(a)(2)(A).

### *Actual Damages*

The FDCPA provides for compensation for "any actual damages sustained by such person as a result of [FDCPA violations]."  15 U.S.C. § 1692k(a)(1). "Actual damages compensate a plaintiff for out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from defendant's failure to comply with the FDCPA."  *Milton v. Rosicki, Rosicki & Assocs., P.C.*, No. 02-CV-3052, 2007 WL 2262893, at *3 (E.D.N.Y. Aug. 3, 2007) (citation omitted).  Here, plaintiff has requested actual damages in the amount of $2,000 based on the stress that she experienced from defendant's telephone message and its disclosure to her fiancee.

The Court rejects the claims of damages related to the overhearing of defendant's message.  "The FDCPA was intended to protect against deliberate disclosures to third parties as a method of embarrassing the consumer, not to

6

protect against the risk of an inadvertent disclosure that could occur if another person unintentionally overheard the messages left on [plaintiff's] answering machine." *Mark v. J.C. Christensen & Assocs., Inc.*, Civil No. 09-100 ADM/SRN, 2009 WL 2407700, at *5 (D. Minn. Aug. 4, 2009) (citing *Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 281 F. Supp. 2d 1156, 1164 (N.D. Cal. 2003)); *see also Edwards v. Niagara Credit Solutions, Inc.*, 586 F. Supp. 2d 1346, 1363 (N.D. Ga. 2008) ("Defendant, however, cites no authority for the proposition that an inadvertent, unintended 'communication' with a third party constitutes a violation of the FDCPA."). Here, plaintiff has made no allegation that defendant knew or could anticipate reasonably that her fiancee lived with her and would overhear the answering machine. Plaintiff further has not alleged that defendant left a message with any intent to embarrass her. Plaintiff has brought to the Court's attention the case of *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643 (S.D.N.Y. 2006), in support of her contention that her fiancee's overhearing of defendant's message constitutes an additional violation of the FDCPA and thus an additional source of stress and anxiety. *Foti* is distinguishable, however, because all of the communications with third parties described in that case consisted of conscious and deliberate attempts by debt collectors to contact third parties such as neighbors and employers. Any calculation of actual damages, therefore, will disregard that plaintiff's fiancee overheard defendant's message.

The Court will accept plaintiff's remaining claims for actual damages. Plaintiff testified at the evidentiary hearing that her employment history includes at least a year and a half in the collections field. Plaintiff thus has more sophistication than the average person regarding things that collectors say and do that should not necessarily be taken at face value. Nonetheless, plaintiff has argued reasonably that a threat of litigation, especially an improper threat, generally is a stressful experience. Under these circumstances, the Court will award actual damages in the amount of $250.

### *Costs and Attorney Fees*

The FDCPA authorizes successful litigants to receive "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The prevailing plaintiff in a FDCPA action is entitled to an award of reasonable attorneys' fees and expenses regardless of whether any statutory or actual damages are awarded. *See Savino*, 164 F.3d at 87; *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989) (citation omitted). As to how district courts should calculate attorney fees when such an award is appropriate, this Court has noted before that

> A reasonable hourly rate is the "prevailing market rate," i.e., the rate "prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984); *see also Cohen v. W. Haven Bd. of Police Comm'rs*, 638

F.2d 496, 506 (2d Cir. 1980) ("[F]ees that would be charged for similar work by attorneys of like skill in the area" are the "starting point for determination of a reasonable award."). The relevant community, in turn, is the district in which the court sits. *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).

Determination of the "reasonable hourly fee" requires a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel. *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005). This inquiry may include judicial notice of the rates awarded in prior cases, the court's own familiarity with the rates prevailing in the district, and any evidence proffered by the parties. *Id.* The fee applicant has the burden of showing by "satisfactory evidence" that the requested hourly rate is the prevailing market rate. *Blum*, 465 U.S. at 896 n.11.

*Fontana v. C. Barry & Assocs., LLC*, No. 06-CV-359, 2007 WL 2580490, at *2 (W.D.N.Y. Sept. 4, 2007) (Arcara, *J.*).

The Second Circuit revisited case law governing attorney fee calculations last year and explained that

In [*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008)], we undertook to simplify the complexities surrounding attorney's fees awards that had accumulated over time under the traditional "lodestar" approach to attorney's fees (the product of the attorney's usual hourly rate and the number of hours worked, which could then be adjusted by the court to set "the reasonable fee"), and the separate "Johnson" approach (a one-step inquiry that considered twelve specified factors to establish a reasonable fee). 493 F.3d at 114. Relying on the substance of both approaches, we set forth a standard that we termed the "presumptively reasonable fee." *Id.* at 118. We directed district courts, in calculating the presumptively reasonable fee, "to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.* at 117 (emphasis in original). The presumptively reasonable fee boils down to "what a reasonable, paying client would be willing to pay," given that such a party wishes "to spend the minimum necessary to litigate the case effectively." *Id.* at 112, 118.

*Simmons v. N.Y. Trans. Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).

9

Here, counsel for plaintiff have submitted detailed affirmations specifying the amount of time spent litigating this case. In reviewing the affirmations, the Court finds that the hours claimed appear reasonable. In assessing whether a reasonable, paying client looking to minimize expenses would be willing to pay for the hours claimed here, the Court bears in mind the provision of the FDCPA awarding attorney fees to successful litigants. Without that provision, a reasonable, paying client likely would not spend nearly $4,000 in fees and costs to obtain a damages award of $400. Factoring in that provision, however, a reasonable, paying client likely would endorse the investment of time that counsel claim here. Counsel spent only 19.1 hours litigating the entire case, less than the time that the Court considered reasonable in recent FDCPA cases that also ended with a default judgment. *See, e.g., Berry v. Nat'l Fin. Sys., Inc.*, No. 08-CV-18, 2009 WL 2843260, at *5 (W.D.N.Y. Aug. 27, 2009) (Arcara, *J.*) (approving a claim of 25.1 attorney hours); *Fontana*, 2007 WL 2580490, at *3 (approving a claim of 22.6 attorney hours and 4.0 paralegal hours). Where a debt collector fails to appear in an FDCPA case, meaning that judgment as to liability is assured and an award of attorney fees is likely, a reasonable, paying client likely would want counsel to prosecute the case to a successful resolution.

The Court finds further that counsel's requested hourly rates are reasonable as well, as they are in accord with the rates approved in *Berry*. *See also Miller v. Midpoint Resolution Group, LLC*, 608 F. Supp. 2d 389, 395 (W.D.N.Y. 2009) (McCarthy, *M.J.*) (setting the hourly rate in an FDCPA case at

10

$215 per hour for Mr. Hiller and $175 per hour for his associate, Amanda Jordan). Lastly, the Court agrees with counsel's request for reimbursement of the $350 filing fee and of the $60 fee for service of process.

Plaintiffs' award of costs and fees thus totals $4,152.50 comprising the following: 10.0 hours for Kenneth Hiller at $215 per hour, totaling $2,150; 9.1 hours for Seth Andrews at $175 per hour, totaling $1,592.50; $350 for the court filing fee; and $60 for the service fee.

## CONCLUSION

For all of the foregoing reasons, the Court awards plaintiffs $150 in statutory damages, $250 in actual damages, and $4,152.50 in costs and attorney fees.

Since all proceedings here now have concluded, the Clerk of the Court is directed to close this case upon entry of judgment.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: January 22, 2010